UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER H.,[1]

                               Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.
_____

DECISION & ORDER

20-CV-0878MWP

**PRELIMINARY STATEMENT**

        Plaintiff Christopher H. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Supplemental Security Income and Disability Income Benefits ("SSI/DIB").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 17).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 13, 14).  For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

### I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  See Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), reh'g granted in part and denied in part, 416 F.3d 101 (2d Cir. 2005); see also Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine de novo whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  See 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an

analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");
>
> (4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his/her] past work; and

   (5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II. The ALJ's Decision

  In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 31, 2016, the alleged onset date. (Tr. 17).[2] At step two, the ALJ concluded that plaintiff had the severe impairments of "history of learning disorder, bilateral carpal tunnel syndrome, status post left carpal tunnel release surgery, [and] ulnar neuropathy." (*Id.*). The ALJ also found that plaintiff had been diagnosed with a small cerebral aneurysm and a history of traumatic brain injury, but that these impairments were nonsevere. (Tr. 17-18). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 18-19).

  The ALJ concluded that plaintiff retained the RFC to perform light work but with certain limitations. (Tr. 19). Specifically, the ALJ found that plaintiff could frequently handle and finger objects bilaterally and occasionally use hand controls, balance, kneel, crouch, stoop,

---

[2] The administrative transcript (Docket # 12) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

and climb stairs or ramps, but could never climb ropes, scaffolds, or crawl. (*Id.*). With respect to environmental limitations, the ALJ concluded that plaintiff could tolerate moderate (office level) noise but could not work in environments with excessive vibration, direct exposure to bright or flashing lights, or hazards such as unprotected heights or moving machinery. (*Id.*). Regarding plaintiff's mental capacity, the ALJ concluded that he was able to perform work that involves simple, routine tasks that can be learned after a short demonstration or within 30 days, simple work-related decisions, and little variation in location, hours and tasks. (*Id.*). The ALJ concluded that plaintiff was able to understand and communicate simple information, but was unable to engage in work requiring frequent verbal communications or teamwork, such as production line work. (*Id.*). The ALJ further concluded that plaintiff would be off task up to five percent of the workday, in addition to regularly scheduled breaks. (*Id.*).

At steps four and five, the ALJ found that plaintiff was unable to perform any past relevant work but, based on plaintiff's age, education, work experience, and RFC, that other jobs existed in significant numbers in the national economy that plaintiff could perform, such as cleaner, garment folder, and sorter. (Tr. 22-24). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

### III. Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 13-1, 16). Specifically, plaintiff contends that the ALJ's "highly specific" RFC determination is flawed because the ALJ reached that determination without a supportive medical opinion and because, despite "g[iving] all of the opinions of record some weight . . . [,] [he] essentially reject[ed] the

5

opinions of record." (Docket # 13-1 at 13). Plaintiff also challenges the ALJ's failure to obtain a medical opinion evaluating his physical capacity, maintaining that the opinion authored by David Brauer, which was the only opinion of record assessing his physical capabilities, was impermissibly stale. (*Id.* at 23).

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

Plaintiff is correct that the ALJ did not assign controlling weight to any of the three opinions assessing plaintiff's limitations in reaching the RFC determination. (*See* Tr. 22). The ALJ gave "some weight" to the December 1, 2016 physical evaluation completed by Brauer, a consultative physician. (*Id.*). At that evaluation, plaintiff complained of left arm weakness and numbness, difficulty with balance, lightheadedness, and headaches. (Tr. 359-62). In Brauer's opinion, plaintiff did not have any limitations in his ability to sit, stand, and walk, or push, pull, lift, and carry objects. (*Id.*). Brauer opined that plaintiff should avoid activities involving unprotected or unrestricted heights or climbing stairs due to difficulty with balance. (*Id.*). In

weighing Brauer's opinion, the ALJ noted that plaintiff reported more severe symptoms during a subsequent visit with his treating provider shortly after Brauer's examination and that the record, including subsequent diagnoses of carpal tunnel syndrome and trigger finger, supported the conclusion that plaintiff also suffered from manipulative limitations.

The ALJ also gave "some weight" to the December 1, 2016 psychiatric evaluation completed by consultative psychologist Janine Ippolito, PsyD.  (Tr. 22, 364-68).  Dr. Ippolito diagnosed plaintiff with the mental impairments of adjustment disorder with depressed mood, rule out specific learning disorder and rule out mild neurocognitive disorder secondary to traumatic brain injury.  In Ippolito's opinion, plaintiff had no limitations in his ability "to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, perform complex tasks independently, make appropriate decisions, and relate adequately with others," was mildly limited in his ability to learn new tasks and maintain attention and concentration, and was moderately limited in ability to deal with stress.  (Tr. 367). Ippolito noted that plaintiff's limitations were caused by his emotional distress and suspected cognitive deficits.  (*Id.*).  In assessing Ippolito's opinion, the ALJ concluded that the "areas of limitation identified by [Ippolito] also support restrictions to simple tasks due to attention and concentration deficits and low average intellectual functioning."  (Tr. 22).

In addition, the ALJ assigned "some weight" to the January 20, 2017 opinion of non-examining state-agency psychologist H. Tzetzo, PhD, who opined that plaintiff would be able to handle normal work pressures and that his psychiatric impairments were non-severe. (Tr. 22, 102).  The ALJ noted, however, that the other opinions in the record were better supported by the evidence of record.  (*Id.*).

Plaintiff does not contend that the ALJ erred in evaluating any specific opinion in the record. Rather, based solely on the ALJ's determination to discount the weight of each of these opinions and, in some instances, assess limitations greater than those assessed in the opinions, plaintiff maintains that the ALJ "relied on his own lay interpretation of raw medical data, as the RFC was more limiting than all of the opinion evidence and the record contained no other useful physical or mental functional assessment, and . . . failed to tether this RFC to the evidence of record." (Docket # 13-1 at 15-16). In plaintiff's view, because the ALJ gave only "some weight" to each of the medical opinions in the record, he improperly "interpreted the raw medical data in functional terms after essentially rejecting all of the opinions of record." (*Id.* at 17).

Plaintiff's challenge is not grounded in any conflicts in the record evidence or in any evidence demonstrating or suggesting that his limitations are greater than those assessed by the ALJ. In fact, the medical opinions in the record do not conflict with the ALJ's RFC findings. The burden is on plaintiff, not the Commissioner, to establish that he suffers from limitations resulting in a restricted RFC. *See Mitchell v. Colvin*, 2015 WL 3970996, *4 (W.D.N.Y. 2015) ("[i]t is, however, [p]laintiff's burden to prove his RFC"); *Williams v. Berryhill*, 2018 WL 987257, *5 (N.D.N.Y. 2018) ("[t]he plaintiff bears the burden of producing evidence to establish any functional limitations that would prevent him or her from engaging in substantial gainful activity").

Simply because the ALJ did not assign controlling weight to any opinion does not mean that he "rejected" the medical opinion evidence in the record. Indeed, an ALJ does not necessarily "reject" opinion evidence by according it less than controlling weight and where, as

here, the ALJ's RFC determination incorporates limitations contained in that opinion.[3] *See*, *e.g.*, *Cottrell v. Comm'r of Soc. Sec.*, 2019 WL 201508, *3 (W.D.N.Y. 2019) ("[c]ontrary to [claimant's] assertion, the ALJ did not wholly reject [the doctors'] opinions; instead, she afforded them 'partial' and 'some' weight and . . . relied on portions of them to determine [claimant's] RFC[;] . . . [j]ust because the ALJ did not afford either opinion controlling weight does not mean that she substituted her own view of the medical evidence for those opinions"); *see also Harris v. Berryhill*, 2017 WL 4112022, *3 (W.D.N.Y. 2017) ("[p]laintiff contends that the ALJ improperly 'rejected' [the doctors'] opinions [which the ALJ afforded 'less than significant weight'] without citing to another medical opinion[;] [p]laintiff overstates the ALJ's actions[;] [t]he ALJ did not 'reject' these opinions[;] [t]o the contrary, he gave them some weight and incorporated certain of the limitations set forth therein into his RFC finding"); *Bockeno v. Comm'r of Soc. Sec.*, 2015 WL 5512348, *5 (N.D.N.Y. 2015) ("the ALJ did not outright reject [the doctor's] opinion, but afforded his opinion 'little weight'[;] [t]he ALJ's RFC determination

---

[3] Irrespective of the terminology used by the ALJ, whether it be "great weight," "little weight," "some weight," or "no weight," the relevant inquiry is whether the ALJ in fact incorporates or accounts in the RFC for the limitations assessed by the medical professional, as opposed to basing it upon his or her own lay interpretation of the medical evidence. *Compare Freeman v. Comm'r of Soc. Sec.*, 2019 WL 2016585, *4 (W.D.N.Y. 2019) (RFC not supported by substantial evidence where ALJ gave "little weight" to the only medical opinion of record and failed to account for resting and lifting limitations assessed in the opinion); *Nanartowich v. Comm'r of Soc. Sec. Admin.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (ALJ's discounting of only medical opinions of record created evidentiary gap in the record; "the ALJ explicitly accorded 'little weight' to the opinions [of the physicians], . . . and nothing suggests that the ALJ accounted for the limitations identified by these physicians in formulating the RFC"); *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) ("[a]fter discounting the opinions, the ALJ determined that [plaintiff] retained the physical RFC to perform the full range of light work[;] . . . it is unclear how the ALJ arrived at this RFC or which impairments he considered in formulating his assessment"); *Gross v. Astrue*, 2014 WL 1806779, *18 (W.D.N.Y. 2014) (RFC not supported by substantial evidence where "[a]fter discounting [the physician's] opinion," the ALJ formulated the RFC "through her own interpretation of various MRIs and x-ray reports contained in the treatment records"); *with Burch v. Comm'r of Soc. Sec.*, 2019 WL 922912, *6 (W.D.N.Y. 2019) ("[a]lthough the ALJ accorded limited weight to both opinions, her RFC assessment nonetheless accounts for the majority of the limitations assessed by both doctors"); *Harrington v. Colvin*, 2015 WL 790756, *17 (W.D.N.Y. 2015) (same); *Crawford v. Astrue*, 2014 WL 4829544, *21 (W.D.N.Y. 2014) ("the ALJ's RFC assessment adopted the limitations assessed by [the physician] that were supported by the evidence and . . . his decision to afford [the physician] limited weight did not create a gap in the record").

includes non-exertional mental limitations, some of which are consistent with the limitations imposed by [the doctor] and supported by other medical evidence in the record").

My review of the record reveals that the ALJ reached an RFC determination that is consistent with and incorporates many aspects of the opinion evidence. As far as plaintiff's physical limitations, the ALJ accepted Brauer's opinion that plaintiff was limited in his ability to work around unprotected heights and climb stairs, which is reflected by the ALJ limiting plaintiff to work that did not require exposure to unprotected heights or moving machinery and did not require him to climb ropes, ladders, or scaffolds. Moreover, the ALJ assessed limitations in addition to those opined by Bauer, including limiting him to light work, with some postural, manipulative, and environmental limitations. (Tr. 19). Contrary to plaintiff's argument that "it is unclear where the limitations assessed in the RFC even came from" (Docket # 13-1 at 17), the additional limitations appear to have been based upon plaintiff's self-reports and the medical evidence in the record. As the ALJ noted, plaintiff reported that increased activity, particularly bending and lifting, exacerbated his headaches and symptoms in his left arm. (Tr. 21 (referencing Tr. 370)). Indeed, plaintiff testified that his headaches could be triggered by bending and lifting objects heavier than 20 pounds. (Tr. 61). Moreover, the ALJ explained that he assessed the manipulative limitations based upon medical notes documenting treatment for carpal tunnel syndrome and trigger finger. (Tr. 22). In addition, plaintiff's testimony and the medical records support several of the environmental limitations assessed by the ALJ, including the light and noise limitations. (Tr. 63 (testimony that headaches can be triggered by many things including noise), 471 (light sensitivity)). In assessing the additional exertional, postural, and environmental limitations, the ALJ did not reject Brauer's assessment, "but rather added to [that] assessment[] based on the medical and other evidence in the record, which he is allowed to

do." *See Dana Lynn A. v. Comm'r of Soc. Sec.*, 2021 WL 5410495, *6 (W.D.N.Y. 2021); *see also Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (summary order) ("the ALJ occasionally deviated from consultative examiners' recommendations to *decrease* [plaintiff's] RFC based on other evidence in the record[;] . . . [t]he ALJ committed no error by determining the scope of [plaintiff's] RFC because that is his responsibility"); *Larson v. Comm'r of Soc. Sec.*, 2020 WL 5018331, *11 (W.D.N.Y. 2020) ("[i]n assessing the additional postural, handling, and fingering limitations, the ALJ seemingly gave [plaintiff] some benefit of the doubt regarding her complaints of pain and the restrictions [plaintiff] herself claimed were associated with her [impairment]"); *Wakefield v. Comm'r of Soc. Sec.*, 2020 WL 3100852, *5 (W.D.N.Y. 2020) ("based upon the record in this case, I find that remand is not warranted on the grounds that the ALJ included greater limitations in her RFC determination than those opined by [the consulting examiner] or assessed a sit/stand option based upon [plaintiff's] own testimony"); *Beckles v. Comm'r of Soc. Sec.*, 2019 WL 4140936, *5 (W.D.N.Y. 2019) ("the ALJ's RFC assessment demonstrates that she ultimately assessed greater limitations than those opined by [the consultative physician][;] . . . [t]he ALJ did not err in discounting the [consultative physician's] opinion on this basis or by including greater limitations in her RFC determination than those opined by [the consultative physician]").

      Nor do I find that Brauer's evaluation was rendered stale by plaintiff's subsequent diagnosis of and surgery for carpal tunnel and trigger finger. Generally, "an ALJ should not rely on 'stale' opinions – that is, opinions rendered before some significant development in the claimant's medical history," *Robinson v. Berryhill*, 2018 WL 4442267, *4 (W.D.N.Y. 2018), and "[m]edical source opinions that are stale and based on an incomplete medical record may not be substantial evidence to support an ALJ['s] finding," *Davis v. Berryhill*, 2018 WL 1250019, *3

(W.D.N.Y. 2018) (alterations, citations, and quotations omitted).  That said, "a medical opinion is [not] stale merely because it pre-dates other evidence in the record, where . . . the subsequent evidence does not undermine [the opinion evidence]."  *Hernandez v. Colvin*, 2017 WL 2224197, *9 (W.D.N.Y. 2017) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order)); *accord Morgan v. Astrue*, 2010 WL 3723992, *13 (E.D. Tenn.) ("[i]n every claim for DIB or SSI before an ALJ, some time will elapse between the date that a medical opinion about the claimant's condition is rendered and the date that the ALJ considers that opinion[;] [f]requently, new evidence about the claimant's condition will come to light during the intervening period of time[;] [t]he SSA's disability determination process would cease to function if ALJs could not rely on a medical opinion simply because some new evidence entered the record after the opinion was provided"), *report and recommendation adopted by*, 2010 WL 3723985 (E.D. Tenn. 2010).  Judged under these standards, I disagree that Brauer's consultative medical opinion was too old to warrant the ALJ's consideration.

In this case, plaintiff has not demonstrated that the record evidence relating to his subsequent surgery undermines Brauer's medical opinion.  The record demonstrates that Brauer conducted an evaluation of plaintiff on December 1, 2016 – prior to plaintiff's diagnosis of and surgery for carpal tunnel and trigger finger.  (Tr. 358-62).  At the time of the evaluation, plaintiff reported to both Brauer and his treatment providers that he suffered from pain and numbness in his hands, causing decreased grip strength and an inability to perform at work.  (Tr. 352, 359, 373, 376).  Medical evidence post-dating Brauer's opinion, which the ALJ considered, does not demonstrate that plaintiff's condition deteriorated after the evaluation.  Rather, review of plaintiff's medical records demonstrate that his left-extremity complaints remained relatively consistent both prior to and following Brauer's evaluation, during which period plaintiff's

treatment providers attempted to diagnose his impairment.  The records further suggest that the diagnoses of carpal tunnel and trigger finger were not made until after plaintiff's treatment providers attempted to determine whether his complaints were related to his history of traumatic brain injury.  (Tr. 352-55, 382-395).  After reviewing imaging of his brain, plaintiff's neurologist recommended an EMG of plaintiff's arm, which resulted in the diagnoses of carpal tunnel and trigger finger, and plaintiff was subsequently referred to an orthopedic provider to address those impairments through surgery.  (Tr. 390-430).

Although plaintiff continued to complain of ongoing symptoms in his left arm after his surgery, particularly after strenuous activity (Tr. 456), the record does not demonstrate that the symptoms were more significant than they had been at the time of Brauer's evaluation.  If anything, as noted by the ALJ, plaintiff's left arm symptoms improved after his surgery for carpal tunnel and trigger release.  (Tr. 21).  Indeed, subsequent to his surgery, plaintiff's treatment provider released him to return to work without restrictions in May 2018, and plaintiff admitted to performing yard work and other daily activities with his left hand.  (Tr. 456-57).  In short, plaintiff neither points to any medical evidence suggesting that his condition deteriorated and caused disabling functional limitations after Brauer's opinion, nor identifies any relevant evidence post-dating the medical opinions that the ALJ failed to consider.  For these reasons, I find that substantial evidence supports the ALJ's RFC assessment.  *See*, *e.g.*, *Abate v. Comm'r of Soc. Sec.*, 2020 WL 4597315, *6 (W.D.N.Y. 2020) ("[a]lthough the record included surgery for [p]laintiff's left knee and the additional cervical impairment, such events did not render [the consulting physician's] opinion impermissibly stale[;] . . . [p]laintiff fails to show any additional limitations caused by these subsequent medical events[,] . . . [and] the ALJ considered [p]laintiff's knee impairments and cervical spine MRI in formulating her RFC determination");

*Ambrose-Lounsbury v. Saul*, 2019 WL 3859011, *3-4 (W.D.N.Y. 2019) ("[claimant] has not shown significant developments in her medical history following [consultative examiner's] opinion that render it stale[;] . . . [claimant's] only new ailment after [consultative examiner's] examination was the 'left ankle swelling'[,] . . . [b]ut the record does not evidence any limitation from that swelling that the ALJ did not account for in the RFC[,] [s]o the ankle swelling is hardly a 'significant development'"); *Sexton v. Berryhill*, 2018 WL 1835494, *7 (W.D. Okla.) (finding no error where ALJ relied on opinion evidence that was completed "before all of the medical evidence was in and [[p]laintiff] became more severe[;] . . . [h]ere, however, the opinions of the state agency physicians are relevant to the period to which they apply, and [p]laintiff does not identify any evidence of a subsequent deterioration in [p]laintiff's condition that was not reviewed and considered by the ALJ[;] [t]he ALJ expressly stated that additional evidence . . . was received and admitted into the record subsequent to the hearing and that he reviewed this evidence and considered it in his determination[;] . . . [b]ecause the ALJ independently reviewed and considered the post-2014 evidence, and [p]laintiff points to no credible evidence inconsistent with the RFC, the undersigned finds no reversible error in the ALJ's reliance on the agency physicians' opinions"), *report and recommendation adopted by*, 2018 WL 1858255 (W.D. Okla. 2018); *Morgan v. Astrue*, 2010 WL 3723992 at *13 ("[i]n this case, [p]laintiff has not shown that the additional objective evidence he cites was inconsistent with the opinions of [consultative physicians][;] . . . [p]laintiff has not explained how a review of the new evidence he cites would have changed the opinions provided by [consultative physicians][;] [a]ccordingly, the [c]ourt cannot find error in the ALJ's decision to rely upon the doctors' opinions").

With respect to the mental portion of the RFC determination, I find that it too is supported by opinion evidence and adequately accounts for plaintiff's limitations. The ALJ

explicitly included mental limitations in the RFC – for example, by limiting plaintiff to work requiring simple work-related decisions but not requiring plaintiff to "independently develop work strategies or identify workplace needs," to engage in frequent verbal communication, or to work in a team, "such as on a production line." (Tr. 19). In addition, the ALJ limited plaintiff to "simple, routine tasks[] that can be learned after a short demonstration or within 30 days." (*Id.*). The ALJ also limited plaintiff to work that requires performance of the "same tasks every day with little variation in location, hours and tasks." (*Id.*). Finally, the ALJ concluded that plaintiff would be "off task up to 5% of the workday in addition to regularly scheduled breaks." (*Id.*). These restrictions are reasonably based upon and incorporate the limitations Ippolito identified, including that plaintiff had moderate limitations in his ability to manage workplace stress and mild limitations in his ability to learn new tasks and maintain attention and concentration. (*See* Tr. 367).

    Without citing any contradictory evidence, plaintiff contends that the ALJ failed to explain his determination that plaintiff would be off task five percent of the workday, maintaining that this error warrants reversal. (Docket # 13-1 at 19-21). I disagree. The ALJ's decision demonstrates that the ALJ gave some weight to Ippolito's opinion assessing plaintiff's mental functioning, and the ALJ's decision suggests that he fashioned the RFC based upon Ippolito's opinion and incorporated limitations suggested by that opinion, including her opinion that plaintiff has mild limitations in his ability to maintain attention and concentration (Tr. 367), as well as by plaintiff's own testimony concerning his difficulties with concentration and communication (Tr. 57, 75-76). Under these circumstances, particularly where plaintiff has cited no record evidence supporting more substantial off-task limitations, I do not find that remand is warranted. *See, e.g.*, *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) (summary order)

15

("[t]he fact that the ALJ assigned a particular percentage range . . . to illustrate [plaintiff's] limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence"); *Sarah S. v. Comm'r of Soc. Sec.*, 2022 WL 34468, *5 (W.D.N.Y. 2022) ("[p]laintiff agrees that the record demonstrates difficulties with attention and concentration, but appears to argue that the mere fact of assigning a percentage of time off task is erroneous per se[;] . . . [t]o the contrary, this [c]ourt finds that the ALJ's five-percent off-task assessment is supported by substantial evidence, given [the consulting physician's] assessment that [p]laintiff would have mild limitations in maintaining attention and concentration[,] [a]nd [p]laintiff does not point to any evidence that would support a higher off-task assessment"); *Andre J. v. Kijakazi*, 2021 WL 5074719, *5 (W.D.N.Y. 2021) ("[n]or is there any merit to [p]laintiff's argument . . . that the ALJ's determination that [p]laintiff . . . would be off-task approximately 5% of the work day because of difficulty maintaining concentration and focusing[] was improper because the ALJ failed to explain his reasons for such opinion[;] . . . the ALJ relied, in formulating the 5% additional time off-task, on [p]laintiff's testimony and medical evidence of [p]laintiff's activities of daily living"); *Dominique M. v. Comm'r of Soc. Sec.*, 2021 WL 3931141, *4 (W.D.N.Y. 2021) ("[t]o be sure, no medical source in the record stated plaintiff would be off-task a specific percentage of the workday, but the ALJ properly explained he included an off-task limitation to account for position changes and concentration difficulties that plaintiff may have as a result of her pain or pain medications"); *Lisa M. v. Comm'r of Soc. Sec.*, 2021 WL 3513832, *4 n.4 (W.D.N.Y. 2021) ("[p]laintiff contends, again without citing any contradictory evidence, that the ALJ failed to explain his determination that plaintiff would be off task five percent of the workday, maintaining that this error alone warrants reversal[;] . . . the ALJ here gave great weight to the only medical opinion in the record assessing plaintiff's mental functioning, and the

16

ALJ's decision suggests that he fashioned the RFC based upon [the consulting] opinion and the incorporation of additional restrictions based upon plaintiff's own testimony, such as her testimony that she has difficulty with concentration and stress"); *Thomas S. v. Comm'r of Soc. Sec.*, 2021 WL 1293105, *4 (W.D.N.Y. 2021) ("the ALJ did not commit remandable error in making a determination that [p]laintiff would be off-task 5% of the workday where the limitation did not correspond to a specific medical source opinion" but was otherwise supported by substantial evidence); *Hallman v. Comm'r of Soc. Sec.*, 2020 WL 3259255, *4 (W.D.N.Y. 2020) ("[i]t is reasonable that the ALJ would afford plaintiff an off-task allowance to account for his subjective complaints[;] [t]herefore, substantial evidence supported the ALJ['s] RFC determination that plaintiff would be off-task 3% of the workday"); *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("[t]he fact that the ALJ afforded [p]laintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand"); *Beaman v. Comm'r of Soc. Sec.*, 2020 WL 473618, *5 (W.D.N.Y. 2020) ("[p]laintiff's argument that the ALJ based her highly specific RFC based upon her own lay opinion necessarily fails[;] [i]t is clear that the ALJ fashioned her RFC finding by referring to [the consultative examiner's opinion] and incorporating additional restrictions based on [p]laintiff's own testimony").

On this record, I find that the ALJ appropriately based his RFC determination on record evidence, including the medical opinions in the record, and not upon his own lay interpretation of the medical evidence. For the reasons stated above, I find that the ALJ's RFC determination is supported by substantial evidence. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of

17

the evidence available to make an RFC finding that was consistent with the record as a whole"); *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (the ALJ is "not require[d] . . . [to] mention[] every item of testimony presented to him or . . . explain[] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"). Thus, remand is not warranted on this basis.

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of SSI/DIB was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 14)** is **GRANTED**. Plaintiff's motion for judgment on the pleadings **(Docket # 13)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                            *s/Marian W. Payson*
                                          MARIAN W. PAYSON
                                       United States Magistrate Judge

Dated: Rochester, New York
        January 31, 2022